Okay, Mr. McKay, representing the government in this case. May it please the court, Brian McKay on behalf of the United States. I'm asking the court today to recognize that Texas robbery is a violent felony because it requires the use, attempted use, or threatened use of physical force. And that's a violent force, as Texas courts have consistently explained for the last several decades. I mean, this is another one of those lawyer kind of cases in which words don't mean what they say they mean. I mean, an ordinary fellow would think a bank robbery is an act of violence. But, I mean, well, that's what you're here for today, but we've said it's not. But you wouldn't think it would be even subject to argument, wouldn't you? What would think if we went out on Camp Street and asked several people, is robbery a violent felony? They would say, absolutely, robbery is a violent felony. And Texas courts have confirmed that, where they've held that right. Yeah, you're taking something away from somebody under circumstances that they don't want to give it up. Absolutely. In Lane, the Texas Court of Criminal Appeals explained that a necessary ingredient for And that violence is used in order to, as Judge Joliot pointed out, has to be used in order to either prevent or overcome a victim's resistance to theft. And it's not just Texas courts and common sense that support the government's argument here. It's also the Supreme Court's explanation in three cases as to what it means to use force. And it's also supported by the many other circuits in this nation that have held that after Castleman, there is no distinction between using force and causing bodily injury. But we've already rejected that. We already rejected that in Rico's Jigia, or however you say that. Enrico Mejia. Is it Mejia? It's a J-E-J-I-A, I think. Is it not? I believe it's M. Oh, okay. It's Enrico Mejia. And if, with the court's, you know, permission, I'll call it Enrico Mejia. Okay. Certainly. This morning. That's certainly what Mr. Fennell, you know, Haines has had on today. But what I want to point out is that Enrico Mejia cannot be right unless Howell, a prior opinion of this circuit, is wrong. There are two things that Enrico Mejia said, and it's three sentences, it's three sentences that Mr. Fennell relies on, three sentences that didn't grapple with the positions, the uniform positions of the other circuits, that didn't account for Howell. In those three sentences, it said two important things. One, Castleman doesn't apply here, and now there, it was the crime of violence definition of the guidelines. Here, of course, it's ACCA. This court has, I think, tried to construe those together. But it said Castleman doesn't apply here. And second, Castleman doesn't change our precedent. And as I said, Enrico Mejia cannot be correct in those two statements unless Howell and Mendez Enriquez later are wrong. Well, it says more specifically, by its expressed terms, Castleman's analysis is not applicable to the physical force requirement for a crime of violence. That's the money quote, so to speak. If that answers the question in a precise manner. The Supreme Court in Castleman certainly reserved that issue, and I would point out that the footnote that Enrico Mejia is pointing to, footnote four, isn't talking about reserving whether the form of what it means to use physical force. It's talking about the level of force. And as I acknowledged in the brief in Johnson in 2010, the Supreme Court decoupled, sort of, changed ACCA force from the level of common law force. The Supreme Court never said, it said both in Castleman and Johnson, our starting point is the common law understanding of what it means to use force. Now, in Johnson they said, for ACCA it requires something more than offensive touching, which would be the common law, you know, included in the common law understanding. It means something more than offensive touching. Instead, in Johnson, what they said it is, is that level of force sufficient to cause physical pain or bodily injury. Isn't this yet another, kind of, continuing the theme of the day, though, that the argument was waited until the very last second. The government didn't make this argument about Castleman and Voisin until after the District Court handed down its ruling on the ACCA. What's going on with that? We're not giving the District Court, you have these arguments that are very scholarly and you're not giving the District Court an opportunity to consider them in a timely manner. I understand. And two things I want to point out about that. One, from the very beginning, when responding to the defendant's objections, the government said from the very get-go, Vargas Duran don't control Villegas Hernandez. These cases don't control. In the context of robberies specifically, neither of which those cases dealt with, but in the context of robberies specifically, the use of force and the causing bodily injury are synonymous. They said that from the very beginning. Now, because the Texas statute requires intentionally, knowingly, or recklessly using force, or I'm sorry, causing bodily injury, Castleman was already in place when the government said that. Right, but you didn't bring Castleman to the court's attention at that time. Right, because Castleman, even though Castleman spoke to intentionally and knowingly, the Supreme Court hadn't spoken to, and it's, I would point out, it's explicit reservation of the issue in Castleman, which would leave some to wonder, but then Voisine, which was decided two months after these objections began, Voisine closed the loop on that. And it was when Castleman and Voisine together explained that under the common law meeting, there, that intentionally, knowingly, and recklessly causing bodily injury requires the use of force. Once that completion had been made, the government did bring that to the court's attention, and it did so, absolutely, it would have been fantastic if the government had brought that to the court's attention, you know, within a week or two of the decision. But it was well before the Second Circuit spoke on the issue in Hill, the Eighth Circuit spoke on the issue of Rice, which were some of the beginning ones, and it was prior to the court's sentence. The court had considered it, the court did consider it, in fact, once Castleman and Voisine were brought up, the court said, I've already considered that, that's part of your assault argument, I've already dismissed it. Yet, still heard the government out, heard the government and said, no, I still agree with my initial ruling that Vargas Duran, Villegas Hernandez, those control, not Castleman and Voisine. Let me just pin this down, if Rico Mejia applies and is not, doesn't violate the rule of orderliness as to how will you lose? No, I don't believe so, because we're not talking here about an Arkansas threat statute that, where threat can be mentioned at some indeterminate time in the future. Okay, but you lose because of Vargas Duran and Villegas Hernandez, it would be better if I had taken Spanish than French. So, the combination of those cases, if Castleman and Voisine don't overrule, then you lose. I don't believe so, and I think that where we see that is the court's recent decisions with respect to the federal robbery cases, with bank robbery in Brewer, with Hobbs Act robbery in- Well, how would you craft a decision, assuming that Castleman does not control in this situation and we have this prior existing case law to the contrary of your case, how would you craft a decision? Because Vargas Duran spoke in terms of an offense that requires no mens rea, DWI intoxication requires, and in fact requires no intentional or volitional, if you will, act. Villegas Hernandez similarly deals with a different offense, and this court has recognized when it comes to robbery, such as in Buck, where it is similarly articulated in terms of robbery taking something by instilling a fear of injury. But you're arguing by analogy to the different points made by the cases, and under our rule of orderliness, only an unequivocal change in the law, not a mere hint, abrogates our decisions. And so that's a problem I have. Okay. I understand. Can you help me with it? I would be glad to help your Honor with it. You'd be glad to try to help her. I'm sorry? You'd be glad to try to help her. I would be glad to attempt that. One, this court has already said, with respect to Voisine, that Voisine did abrogate Vargas Duran, and Voisine didn't speak any more clearly. In fact, it was less clear than Castleman was. As I pointed out, I think it's in page 11 of the reply, you can't put Castleman and Vargas Duran and Villegas Hernandez together and synthesize them, where Vargas Duran said in a footnote following the Second Circuit, which has since changed positions, we think there's a difference between using force and causing injury. The Supreme Court said, no, there's not. And Villegas Hernandez said, we think poison isn't using force. And Castleman and the Supreme Court said, no, it's not. And in Villegas Hernandez, the court said, in direct use, we recall the Rompenos rejecting Judge Smith's dissent, we think indirect use, it doesn't count. And in Castleman, the Supreme Court said, it does. And I think the best indicator that that analysis applies to ACCA is in that same paragraph where the Supreme Court was rejecting this notion that indirect force doesn't count. What did they use as an example? They said, look, if indirect use doesn't count, then that would mean someone could say that pulling the trigger of a gun doesn't count as use of force because it's not the trigger, it's actually the bullet that causes the injury. To me, that is a prime example of how the court's saying it applies in ACCA because never would we say that Congress intended shooting a gun or poisoning somebody. That's domestically violent, but it's not generically, that's not what we think of as violent. But Texas courts have interpreted the robbery statute to require only minimal physical contacts in contrast to Curtis-Johnson, for example, which requires violent force under the ACCA. So Texas itself says it's a minimal thing, and doesn't that color this analysis? Not at all. And I would, one, point the court to the Seventh Circuit's recent decision in Jennings where they're dealing with the same issue under Minnesota law. But what Curtis-Johnson says is, it's got to be more than offensive touching. When we look at Lane from the Court of Criminal Appeals, they say the precise thing with respect to Texas robbery. It has to be more than offensive touching. And in Curtis-Johnson they say it has to be enough to cause physical pain or bodily injury. And what the Court of Criminal Appeals did in Lane is it explained, look, we can talk about is this bruise big enough, is it purple enough, whatever, but let's don't lose sight of what Texas robbery is. It may be, and again I echo the Seventh Circuit in Jennings, it may be that the manifestations appear to be light. But let's not forget about, in Lane, what it was. It was a twisting struggle, to use the Court's language, a twisting struggle as a man was trying to take a woman's purse. And she had a bruise. She felt pain. The Court of Criminal Appeals said we may, you know, kind of argue about whether this bruise is enough or what have you, but don't lose sight of what Texas robbery is. It requires violence. It is by nature a violent offense. So is that the main error of the district court, in your view? I believe that is one of the fundamental errors. When the court rejected the government's position, it said, look, pointed at Lane and said this minor bruise won't do it. The district court did not read Johnson as saying a minor bruise would be sufficient. We disagree with that. Johnson says it's more than offensive touching. It is enough to cause physical pain or bodily injury. But what I think the district court missed was Lane's discussion of, let's don't lose sight by arguing about the different gradations of injury. And let's recall that what this is is a violent offense. And the necessary ingredient, to circle back to where I started, a necessary ingredient of this offense is that it has to have violence. And that violence can't just have free-floating violence. It has to have violence that is used for the purpose of either preventing or overcoming a victim's resistance to theft. And for that reason, yes, Texas robbery is a violent felony. Mr. McKay, I feel your pain. The district judge worked, went to a great deal of effort in ruling on this case. And I think he strained with this ruling. I think I could sense that he was having a difficult time making this ruling. But isn't it a fact that the Texas statute obviously wasn't written to help you out with ACCA violations and it just makes your job difficult? How can, tell me again, I know you just told Judge Elrond, how did the district judge miss it? How did he miss it when he ruled as he did? Certainly. With respect to the level of force, as I explained, and focusing on whether this bruise is sufficient, and losing sight of the Court of Criminal Appeals explanation that it's about violence. With respect to whether there's this distinction between using force and causing bodily injury, and still applying that distinction, I think the district court erred at that point. Because as the Second Circuit, the Fourth Circuit, that were formerly with this court in drawing that distinction, have used their positions in light of Castleman, have recognized that Castleman corrected that. The court, after considerable angst, said until it is told otherwise, it's going to go with the distinction. And you're saying the Supreme Court precedent is sufficient to require this court to overrule its prior case law? Yes. Okay. Okay, Mr. McKay. We have to save some time for rebuttal. Mr. Wright, representing Ms. Fennell. Thank you, Your Honor. Matthew Wright, and I'd like to introduce my co-counsel, Michael Layman. I think this is his first time here. We are representing— We're glad to have him here. I'm sorry, Your Honor? We're glad to have him here, and we hope you're a good mentor for him today. Show him how to argue when he comes again. Thank you, Your Honor. In order for this court to overturn the district court's well-reasoned, thorough opinion, the law would have to be absolutely clear. And that's for three reasons. First, because as Judge Elrod has pointed out, there's binding Fifth Circuit precedent on this point, precedent that's been followed by courts and litigants for more than ten years. Second, because the government, on its primary argument, which was that Castlemane and Boissin together overruled this well-established Fifth Circuit precedent, that argument was forfeited and was not raised until after the court had ruled, and again, in a Rule 35 motion, which we pointed out requires a clear error. And third, even without those first two points, what we're talking about is to take a case that in the district court's very carefully considered view warranted a 58-month sentence and force the court to impose a 15-year minimum. So the rule of lenity would certainly apply. For those three reasons, the law would have to be absolutely clear, and I submit, I think without much controversy, it's not clear, Your Honor. These are difficult questions, and I'd like to start off with that first reason, that the rule of orderliness. Judge Elrod, in the previous argument, which won't be on the recording, you mentioned three qualities of the rule of orderliness in the Supreme Court. The rule of orderliness is a strict rule. It requires very clear guidance, and it must be directly on point. And similar points from your opinion in Traxler in 2014. That's not what we have here. What we have is Castlemane, which is the one that the government relies on to abolish the distinction between causing injury and using force. Castlemane says we're not talking about the Armed Career Criminal Act. So Volume 134 of the Supreme Court Reporter, pages 1410 to 1413, in the government's view, could be ripped out of the book, like the scene at the beginning of Dead Poets Society. Just tear it out. Don't pay attention to that. And instead adopt Justice Scalia's concurring opinion, which drew no other votes. The Supreme Court went to great pains to say we're not talking about what they call violence simpliciter. In other words, if we're defining violence as a generic matter, we have one definition, but in this very specialized context, a term of art, which is domestic violence, a misdemeanor crime of domestic violence, we're going to do things differently. That can't be unequivocal. That is not an unequivocal overruling of this court's precedent because the Supreme Court said we're not ruling on that question. Now my second point was that the government forfeited this issue. The government did not raise the Castleman point until after the district court had written a seven- or eight-page opinion on the question. I'd like to direct the court to page 250 of the record. This was after the three-hour sentencing hearing, what we call the second hearing. Page 250 of the record, the court says, if there is any further authority on the Armed Career Criminal Act. So just to refresh your memory on the record, we had won on the fear version of the robbery. We'd won on that, and then we started talking about this guideline question and we sort of unwanted it at that time. And I said, can we keep it? No, we can't keep it. And the court says, I'm going to order supplemental briefing. Any further authority on the Armed Career Criminal Act, give it to me by the deadline. And then the court extended the deadline at our joint request because it was a very busy time, extended it to July 22. So even after Voisin was decided, extended the deadline to July 22, and there's not one mention of either of these points in the briefing. Instead, the government's argument was then, as it was throughout the lower court proceedings, robbery is somehow different than assault. And as we point out, they were basically relying on old, pre-1974 Texas case law. That argument's wrong. I'm happy to talk about why it's wrong. That was the argument below, and the district court itself recognized it because we're doing the sentencing factors. We've had allocution. We're talking about where should the court exercise its discretion to sentence within the statutory range. We go through all of that, and at that point the government says, just one more thing, there's these two cases, Castleman and Voisin, that upend these decades of precedent. And the district court recognized immediately, no, no, no, no, no. We've been over this, right? This was not an example where the district court was rushing through, nor was it an example where the government attempted to show good cause, which is what Rule 32 would require for an untimely objection. The court says there's no reason it couldn't have been raised earlier. The government either didn't recognize that was an argument it wanted to make, or perhaps consistent with its own briefing to the Supreme Court in Voisin, recognized that domestic violence, 922 G9, is a different definition than armed career criminal act, so it wouldn't have anything to say about ACCA for whatever reason. It wasn't raised until the court ruled on it. This court has said time and time again that a district judge has to have some right to control its own docket. There has to be some point at which the court says no. And the court has said when there's a dual ruling, I agree the judge ruled on the merits of this question, and the judge got it right, which is the good news, but there's a dual ruling that says this is out of time and it's wrong, that you would not be doing service to the district judge. The record reveals his concern that no one comes up to defend his decision at the Fifth Circuit. They'll go off in a different direction, right? He says that a couple of times in the record. You're not doing service to him if you say you recognize it was untimely, but we're going to treat it as though it was. So we have to get over that hurdle if we want to address it. That is a hurdle. Untimely is something you have to pass through to decide this case, whether or not it's untimely or not. You can decide the case in the government's favor. Now, if the court wanted to rule on the merits question, to provide guidance, a lot of dual rulings— Do we need to provide guidance? Do we want—does everybody think we need to provide guidance or do we think we already have the guidance? I think that we do have the guidance. I think Rico Mejia answers the question unequivocally, right? So we haven't talked about Rico Mejia yet. You did with the government. These arguments weren't just an afterthought. The government filed a petition for rehearing in Rico Mejia, making exactly the same arguments that, oh, you should apply CASM when other circuits are doing this. You're going the wrong direction here. And the court granted the petition for rehearing but sort of sticks by the ruling at Castleman. For the reasons that I've said, Castleman does not overrule our precedent. Castleman is different than what we call the Voisin rule. On the issue of recklessness, we've preserved that in our briefing. I'm going to confess, this is a real tough issue, figuring out the mental states and whether recklessness is about the strangling, as in howl, or is it recklessness about the injury. Here we have a very general sort of recklessness, a defense you could commit by recklessly fleeing in a car from the robbery, right, if someone is injured during that. I say that's not enough to be use of force. But, again, it's certainly not clearly the case that it is. The government would have to have clarity, and they don't have that here. So do we have to apply plain error for the government to win? Yes, Your Honor. And do we have to choose to use our prong four or not? I don't think you have to lose on prong four. I'll spot them three, right, that under Fifth Circuit precedents, the difference between what was a fair and just sentence of 58 months and what the government contends is the congressionally mandated sentence of 15 years. Right, but we would still retain the discretion. And I'll have to ask the government that on the fact that we would have discretion if it was, you know, comports with our – I don't see that that's really briefed in any extent, so I'm not sure they agree that it's the regular plain error analysis that your side is often more up against than they are. But it's flipped here. It's flipped in more ways than one, Your Honor. Can you help us with the Howell case? Absolutely, Your Honor. Mr. Howell was convicted of an offense that requires you to strangle your girlfriend, essentially, right, or choke her. Now, I'm using gendered terms there, and I mean no offense to anybody, but that's the way we typically imagine this. This is someone with a prior conviction for domestic violence who injures a family member by either choking or strangling and blocking the, you know, the arteries or the airway. Right? That's the force in Howell. Okay. I'm actually asking you. It was argued that Rico Mejia is not really good law in our circuit as to these points because somehow it's running afoul of the prior precedent in our rule of orderliness Howell. I'm sorry to be such a technocrat here, but that's the question I want you to deal with. Howell, if it speaks to anything in this case, it speaks to the issue of recklessness, and that's typically what we call the Voisin argument, right? Does the presence of a reckless state of mind beat use of force? That's something that's never really been clear. It's something we've argued about before. It was assumed for a while. I will confess that, you know, we can file 28 J's in the last two weeks. Opinions are coming out in different directions on recklessness. Howell, if anything, speaks to that recklessness issue. That is entirely separate from the issue of causation of injury from whatever mental state you have versus the use of force. Right? Voisin says nothing about that. Howell doesn't have to say anything about that because, again, the activity, the force there is in the elements. So Howell doesn't sort of pre-overrule Rico Mejia because they weren't asked to rule on this question of the actus reus of the offense. In other words, whether or not causing injury is the same thing as use of force. Does Rico Mejia have an internal conflict with Howell, even if it's in a different situation? No, Your Honor, it doesn't. The government is going to have to argue that Castleman, Voisin are one and the same. If one applies across the board, the other one applies across the board. And so Howell's application of Voisin's rule somehow means that you are also forced to let Castleman move beyond it. That's just wrong. That's just not right. Now, there's some fairly persuasive arguments, right, which might suggest that recklessness alone doesn't count for purposes of the Armed Career Criminal Act. And that is an argument that we've raised here. But I don't think you even have to consider the recklessness issue here because what you have is Villegas-Hernandez, you've got Vargas-Duran, you've got Rico Mejia, you've got — Your Honors, no. This is a difficult area. You can see that in the district court saying, give me some precedent. I don't want to get it wrong. This is hard. If you look at the threatening cases, the terroristic threatening cases, we think the better rules like Ortiz-Gomez, some of the other ones that we've cited, but the government cited other ones. This can be really difficult. If the judges in this circuit know one thing and one thing, they know this. Causing injury, not the same thing as using force. That's from Vargas-Duran. That gets applied in Villegas-Hernandez, which is on the assault statute, right? It's an assault of a peace officer. It's exactly the same primary conduct as the bodily injury form of robbery. So you cannot distinguish the two of them. Would we be creating a circuit split or does a circuit split already exist? If we reach it, if we decided that it was time-barred or if we decided prong four wasn't a thing, we wouldn't create any circuit split. But if we ruled straight up on the merits. Or does it already exist because of Rico Mejia or not? Well, Your Honor, Rico Mejia is not the only case that has said we can't apply these two holdings without limitation. There's one from the Eighth Circuit. So the government's pointing out the Eighth Circuit is maybe not with us on Castleman. But then more recently, on July 20th, they issued a decision where they said, but on recklessness. So if the offense could be committed by reckless driving, which is going back to Leo Cowell, then it's not use of force. And so that case is United States v. Fields. And I can get you a citation for that on 28J. And the government has pointed out very helpfully. You told them about this? No. This is the first time I'm mentioning Fields about that. But related to that also in Bennett, right, which is the First Circuit case that Justice Souter said on that panel. And we did talk about this other case, Wendley. So the government said in the most recent 28J. Well, I realize that I'm not the presiding judge here. But I would say that to the extent you're being a mentor today, it's very important if you're going to cite a new case that you tell the other side who's sitting at the table when you arrive if you just happen to discover it the morning of the argument, that that's the best practice. And, Your Honor, and I appreciate that. And we've at least attempted to do that with this case, Wendley, from the First Circuit and with a Texas Court of Criminal Appeals case that I thought might come up. Honestly, I didn't think this one would. I didn't think we were going to talk about what different circuits did because the Fifth Circuit rule is just so clear. So if we were having this discussion with everyone here in the en banc court, then maybe we would talk about where the other circuits are. But I do want to say in response to the question of is there a circuit split, probably. I mean — There's already a circuit split is your answer? Yes. Or is it that we would create one here? That's a very important distinction. You would not create a circuit split by ruling in our favor in this case, even on the merits. You wouldn't create a circuit split. Now, the government will say yes on whether or not Castleman applies to the Armed Career Criminal Act. But if there is a split on that point, that split is already established by Fifth Circuit precedent. This Court has already always been stronger than the other circuits on this distinction between the causation of injury, the indirect causation it's called, and the use of force. Probably because Texas defines its assault of offenses in such a strange way. So, Judge Jolly, you started off the argument talking about what people on the street think of as robbery and is that violent. And the typical situation, maybe it is. That's the United States v. Davis, right? And the residual, if we're going on gut instinct, our gut instinct would be, yeah, this is a violent felony. But the residual clause has been struck down. We're now limited to the elements of the offense. And Texas defines its elements in a very strange way. And this is the other case that I mentioned, and I did provide this to opposing counsel this morning. I just found this late last night. Howard v. State, 333 Southwest 3rd, 137. He hasn't had an opportunity to really review it. I just gave him a copy this morning, so we'll do it by 28 days. But in Howard, the robbery was the convenience store owner was in the back room, sees the defendant come in on the video screen. It was an aggravated robbery case because he had a gun, he had a mask. He's trying to get in the cash register, can't get into it, takes his wallet. You're arguing the facts of the case that you say you furnished him shortly before oral argument? That's correct, Your Honor. To point out the answer to the question of why this circuit is different, because this circuit deals with Texas offenses a lot more than the other circuits do. You're springing it on him twice, is that it? Maybe so, Your Honor. Like I say, I'm happy to do it by 28 days. That's not fair. Well, Your Honor, I would apologize to opposing counsel and to the court. I know that it's important to this court to get it right too if you're going to rule on the merits. Well, you can do it in 28-day letters. It gives him an opportunity to respond. And as I say, we will, Your Honor. We're going to do it this week as soon as we can to give him a chance to respond to it. But I didn't. We have also gotten the situation. Okay. You can call our attention to it, but then to argue the facts from your point of view when he hasn't had an opportunity to argue from his point of view, it doesn't strike me as the kind of thing that is appropriate. The point is well taken, Your Honor. And I would just cite the court to 333 Southwest 3137 to expect a 28-day shortly after I make it back home. That shows that things that would not be robbery in the intuitive sense still satisfy the elements of this crime. And that's why this court has dealt with it squarely in cases like Vargas Duran and Villegas Hernandez. This is also, again, this is mostly we're dealing with the bodily injury form of this, which we think is well settled. I thought this was an easy one. But as the district court points out, Rico Mejia, in following some of these terrorist or threatening cases, sort of independently applies on this issue of putting someone in fear, which doesn't require an explicit threat. And my friend mentioned the federal bank robbery case, Brewer. And I think that's – I'm glad we get the chance to make that distinction because the bank robbery case, the taking of the property has to be by intimidation. In other words, it's the key that unlocks the door. That was also the argument the government made throughout the proceedings below until the district court ruled. Robbery is different than assault because there's this direct sort of confrontation. But that's not what the elements say. The elements clause requires an element, the use or threatened use of force to be an element. So if someone is placed in fear by the defendant while the defendant is committing a theft or while he's running away from the theft, if they're placed in imminent fear, then that's a robbery in Texas. But that is not a robbery according to someone on the street. Your Honor, I can see that the yellow light is on. I wanted to make a couple of points before I left. Actually, no, I don't think so. If the court doesn't have any further questions, I think I've covered most of what I wanted to today. Okay, thank you. One more question, if I may. The Texas statute is different. It's just a — and what you're saying is — and, in fact, it's different from the other two States that comprise the circuit. What you're saying is because of what the legislature has done, it takes — in Texas case law, it takes what is apparent to most anyone, that robbery is a violent offense, and says it's not. That's what you're asking this court to say. The prior precedent requires us to say that it is not a violent offense and it does not trigger the ACCA. Your Honor, essentially, yes. I would say to sort of resolve the tension that's there, you don't have to say it's not a violent offense. That's the part that sounds weird, right? But it doesn't trigger the ACCA. Right. You could say that if you list the elements of this statute, use of physical force and threatened use of physical force are not among those elements. Now, robbery fell within the residual clause. Historically, it was violent and categorically violent. This court held so in 2007. But once that's taken away, you're back in what the court said in the — Does any other State not classify robbery as a violent offense? There are other robbery statutes that have been held post-Johnson to no longer be violent felonies. They're different than Texas. And so, again, if we're looking at the elements, compare elements to definition, it's just not there. It's certainly not there as clearly enough as you would need to overcome plain error, to overcome the rule of lenity, and to find that this Court's, Villegas-Hernandez, Vargas-Turan have been unequivocally overruled. Thank you, Your Honor. Thank you, Mr. Wright. Mr. McKay, you've saved some time for rebuttal. Thank you, Your Honor. Judge Elrod, I will address the fourth-prong issue that you raised. If I may first discuss this matter, the allegation that Castelman and Voisine haven't spoken clearly enough. The Court said in Howell implicitly it spoke clearly enough to abrogate, at least erode, Vargas-Turan. That was clear. It was absolutely clear to Howell. Howell, as I said, Rico Mejia cannot be right unless Howell is wrong. And for that reason, what I mean by that is Rico Mejia said that Castelman doesn't apply here, and it doesn't abrogate our precedent. Howell said otherwise because, first, Howell looked to Castelman for the answer there in that Texas assault statute. Not finding the answer there, then it turned to that companion, Voisine. And I understand that superficially counsel would like us to draw a line and say, Castelman only goes this far, Voisine goes much further. Superficially, that's attractive. But I have spent a considerable amount of time trying to think of the intellectual gerrymandering that would have to go to say Congress intended. Because keep in mind, what we're doing here is trying to figure out what Congress intended when they said using force. Congress intended recklessly using force as explained in Voisine. That applies. But intentionally and knowingly using force, no, no, no, no, that only applies in domestic violence. That's not true. And, again, point the court to this example of shooting a gun and poisoning. In no reasonable interpretation would we say that poisoning, shooting a gun, that's domestically violent, as the court was explaining in Castelman. But that's not really generically violent. No, it's violent. And as Texas courts have said, robbery is a violent offense. But is the problem there you're trying to put common sense onto our competing rulings and we're just trying to figure out what exactly our previous rulings say? You're trying to overlay some sort of logical answer, and we're just looking for what does the thing say? I don't think that we suspend logic and common sense in this realm. After all, we are, jokes aside, we are discerning what Congress meant to do. And I do think that it's self-evident that in saying are perennial robbers, felony assailants, murderers, people who cause injury, are they the people that Congress intended to capture in ACCA? Absolutely. Well, you've got two other problems, Mr. McKay, timeliness that the district court found against you and also prong four, perhaps. I find no finding on the court's part. The court absolutely expressed some frustration, and I understand it in this rapidly evolving environment. But never have I seen, and the briefing is replete on both sides with plain error cases or cases where the court was asked to apply plain error, and never have I seen one in which the district court was more thoroughly presented with an argument, the gravamen or essence of it, that is, in robbery, using force and causing bodily injury are synonymous. That was said from the very beginning. Or the finer points of it, Castleman and Voisine, presented, they were presented to the court, and again I reiterate that the court said, I've already considered that. I've already ruled on that. You're not telling me anything new by saying Castleman and Voisine. Yet even then, the court entertained that argument and said, no, it doesn't change my mind. Well, you're holding me in suspense on this prong four. You're 58 seconds. Absolutely. Your Honor, to say that this doesn't call into question the fairness of the proceedings or the, you know, that the court would simply say, yeah, it's wrong, but we're just going to look the other way, is to say to this community in Mesquite, Texas, where Mr. Fennell got drunk, shot off a gun, this isn't just a car stop where a guy had a gun and you shouldn't have had it. This is a man who got drunk, took his wife's gun into the front yard of his neighbor's house, knocked on the door first and made, you know, references to Chicago murders or something like that, then stood in the front yard and fired off at least five rounds. To say that that community isn't to be protected against Mr. Fennell, as Congress intended. I thought that was an ordinary kind of thing that went on in Texas. I'm afraid not, Your Honor. Do you argue that you can meet the prongs? Do you argue this in your briefs? Well, in my reply, because I didn't argue it in the first because I didn't think that Plano replied. In reply on the very last page. You agree that Plano replies. Absolutely. You're conceding that, yes. I'm sorry? You concede that plain error review applies. Oh, absolutely not. But out of, as I say, out of abundance of caution, if this Court was to apply it, we meet it. So I don't concede at all that it applies. This was thoroughly presented to the district court. How would you satisfy prong two? There's a footnote in my reply brief. Which I'm reading. And I'm sorry, I don't know the page number. It's footnote 19 on page 22. Garcia. Where this Court, that is one example where this Court has said the, I'm sorry. That's not it. Or maybe it's Garcia, Garza, I'm sorry. But where this Court has said, look, all the other circuits are uniform on this. And all the other circuits are uniform in saying Castleman. After Castleman, there is no distinction. That's the best you got on that it's plain. Yes. It seems very complicated, not very plain. This Court has found plain error in more complicated situations. Okay, Mr. McKay. Thank you very much. Thank you. The Court will take about a 15 minute break.